UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------x
:
:
:
ADONICA GILL and ROSLYN HUNTER,              :
:
Plaintiffs,              :         13 Civ. 9088 (TPG)
:
v.                       :         **OPINION**
:
ACACIA NETWORK *et al.*,                         :
:
Defendants.              :
:
:
------------------------------------------------x

Plaintiffs Adonica Gill and Roslyn Hunter, proceeding *pro se*, bring suit against a number of corporate or state health providers, including ACACIA Network, Inc. ("ACACIA"), South Bronx Mental Health Council, Inc. ("SBMHC"), the New York City Office of Mental Health, and the New York State Office of Alcoholism and Substance Abuse Services. Plaintiffs also bring suit against the following individual defendants, who plaintiffs allege "are officers, board members or senior executives of either SBMHC or ACACIA[]": Humberto L. Martinez, Vicky Gatell, and Samuel Lopez (collectively, "the executive staff"), as well as John Langrod, Efren M. Alba, Joseph Straci, Robert Rowe, Luz Haydee Rivera-Myrick, Richard Izquierdo, and Norland Berk (collectively, "the board").

ACACIA is a community-based health and housing network, which allegedly took over SBMHC in March 2013. In substance, plaintiffs allege that they were wrongly denied payment of fringe benefits and wages, as well as WARN Act notice and COBRA notice and benefits,

1

when they were terminated by SBMHC. Plaintiffs allege violations of the federal and New York State WARN Acts, federal and New York State COBRA requirements, the ERISA Act, the National Labor Relations Act ("NLRA"), the Fair Labor Standards Act ("FLSA"), and New York State labor law.

Individual defendants Martinez, Lopez, Langrod and Alba bring a motion to dismiss all claims, and to consolidate this action with a similar lawsuit that was previously pending in this district before Judge Briccetti. Individual defendant Berk brings a substantively similar motion for judgment on the pleadings. Finally, ACACIA and individual defendant Gatell bring a motion to consolidate and dismiss.

Since the pending motions were fully briefed, the similar action previously before Judge Briccetti has been dismissed with prejudice.[1] The sections of the motions to consolidate and dismiss that request consolidation are therefore denied as moot. However, for the reasons discussed below, the motions to dismiss are granted in part.

## THE COMPLAINT

The followings facts are drawn from the complaint, and are assumed to be true for purposes of the instant motions.

Plaintiffs are former employees of defendant SBMHC, which ceased operations in March 2013. Plaintiffs allege that defendant ACACIA "is the successor employer to SBMHC," and that defendants NYC Office of Mental Health and the New York State Office of Substance Abuse Services "are joint employers of both SBMHC and ACACIA Network." (Compl. at 2.) Plaintiffs further allege that the individual defendants are "officers, board members or senior

---

[1] See *O'Connor v. Acacia Network, et al.*, 13-cv-8536 (VB), Dkt. Nos. 69-70.

executives of either SBMHC or ACACIA and are all and each individually, personally jointly and severally liable for the unlawful conduct in this matter." (*Id.*)

Plaintiffs allege that they "were not given proper federal and state COBRA or federal and state WARN Act notice when [their] employment ended with SBMHC." (*Id.*) They further allege that they "were not properly paid under the Fair Labor Standards Act and other applicable law nor were [they] hired by ACACIA." (*Id.*) Plaintiffs allege that "Defendants violated federal ERISA law by failing to pay [plaintiffs] severance and accrued fringe benefits[,]" and that "Defendants failed to pay [plaintiffs] properly under state wage and hour law." (*Id.* at 2-3.)

After defendants filed the instant motions, plaintiffs filed two identical "affirmations in reply," seeking to buttress the allegations in their complaint. (*See* Dkt. Nos. 50-51.) Plaintiffs claim that they "believe that the executive staff has individual liability because they were employers whose decisions directly affected the nature of our employment and they are liable for any failure to pay wages." (Dkt. No. 50 at 2.) Plaintiffs further claim that the individual defendants "were responsible for hiring and firing and in control of all conditions affecting our employment and compensation." (*Id.*) Plaintiffs add that "although board members were not employers they endorsed the self enrichment of executive staff in anticipation of the agency closing." (*Id.*) To support these additional allegations, plaintiffs submit February 2013 board minutes from SBMHC, which plaintiffs claim show that the SBMHC executive staff passed a motion to pay accrued fringe benefits to executives "without regard to fringe benefits owed to plaintiffs." (*Id.*) These board minutes allegedly show that defendants Langrod, Rowe, Marquez-Alba, Straci, Rivera-Myrick, Izquierdo, and Berk were members of the SBMHC board, while defendants Martinez, Gatell and Lopez were members of SBMHC's executive staff but not the board. (*Id.* at 5.)

Plaintiff Hunter's employment with SBMHC ended in December 2012. Hunter seeks accrued fringe benefits totaling $21,905, which consist of vacation, holiday, severance, and sick pay.

Plaintiff Gill's employment with SBMHC ended in March 2013. Gill seeks accrued fringe benefits totaling $35,283.08, which consist of vacation, holiday, severance, sick pay, and approximately $4,000 in out-of-pocket medical expenses that Gill claims should have been covered under COBRA.

Collectively, plaintiffs seek "all damages allowed by law; make whole damages for unpaid wages and benefits; punitive damages; liquidated damages, court costs [sic] interest and penalties." (Compl. at 3.)

## DISCUSSION

To survive a motion to dismiss under Rule 12(b)(6), a complaint must plead sufficient facts to state a claim for relief that is plausible on its face. *Ashcroft v. Iqbal*, 556 U.S. 662, 677-78 (2009); *Bell Atlantic Corporation v. Twombly*, 550 U.S. 544, 570 (2007). Reciting the cause of action does not suffice. Instead, a plaintiff must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. Unless a plaintiff's well-pleaded allegations have "nudged [her] claims across the line from conceivable to plausible, [the] complaint must be dismissed." *Twombly*, 550 U.S. at 570. In deciding a motion for judgment on the pleadings under Rule 12(c), the court applies the same standard as it would in deciding a Rule 12(b)(6) motion. *Patel v. Contemporary Classics of Beverly Hills,* 259 F.3d 123, 126 (2d Cir. 2001).

Where, as here, a plaintiff is proceeding *pro se*, that plaintiff "is entitled to a particularly liberal reading" of the complaint. *Lopez v. Jet Blue Airways,* 662 F.3d 593, 596 (2d Cir. 2011).

But even a *pro se* plaintiff must plead enough facts to state a claim that is plausible on its face. *Johnson v. City of New York*, 669 F. Supp. 2d 444, 448-49 (S.D.N.Y. 2009).

    A. <u>The Federal and New York WARN Act Claims</u>

The federal Worker Adjustment and Retraining Notification Act ("WARN Act"), 29 U.S.C. §§ 2101 *et seq.*, requires "employers" with more than 100 full-time employees to provide 60 days' advance notice of "plant closing" or "mass layoffs." A "plant closing" occurs when a "permanent or temporary shutdown of a single site of employment" leads to the loss of employment for at least 50 employees during a 30-day period. *See Guippone v. BH S & B Holdings LLC*, 737 F.3d 221, 225 (2d Cir. 2013) (citing § 2101(a)(2)). A "mass layoff" occurs when, not as the result of a plant closing, a reduction in force "results in an employment loss at the single site of employment during any 30-day period for—[1] at least 33 percent of the employees (excluding any part-time employees), and at least 50 employees (excluding any part-time employees); or [2] at least 500 employees (excluding any part-time employees)." *Id.* (citing § 2101(a)(3)). Employers "who fail to comply with WARN are liable to affected employees for up to 60 days of pay and benefits." *Id.* (citing 29 U.S.C. § 2104(a)(1)).

The New York WARN Act, N.Y. Lab. Law § 860 *et seq.*, largely mirrors the federal WARN Act, but says that "employer" includes all employers that employ more than 50 full-time employees, as opposed to 100, NYLL § 860–a(3), and that a "plant closing" is the termination of at least 25, as opposed to 50, employees at a single site of employment, NYLL § 860–a(6). The New York WARN Act also contains stricter notice requirements, requiring an employer to give 90 days' notice before termination, as opposed to 60. *See 1199 SEIU United Healthcare Workers E. v. S. Bronx Mental Health Council, Inc.*, No. 13 CIV. 2768, 2013 WL 6003731, at *2 (S.D.N.Y. Nov. 13, 2013), *report and recommendation adopted sub nom. 1199/SEIU United*

*Healthcare Workers E. v. S. Bronx Mental Health Council Inc.*, No. 13 CIV. 2768 JGK, 2013 WL 6244716 (S.D.N.Y. Dec. 3, 2013).

The provisions of the federal WARN Act say that "employer" refers to a "business enterprise." 29 U.S.C. § 2101(a)(1). The New York statute similarly says that an employer is a "business enterprise." Courts in this Circuit have interpreted this statutory language to mean that neither the federal WARN Act nor the New York WARN Act provide for any liability of individuals, but rather target only corporate entities. *E.g., Warshun v. New York Cmty. Bancorp, Inc.*, 957 F. Supp. 2d 259, 267 (E.D.N.Y. 2013). By contrast, in determining whether a *corporate* defendant is an "employer" or "business enterprise," the Second Circuit has applied a non-exclusive five-factor test set forth by the Department of Labor, including: (i) common ownership, (ii) common directors and/or officers, (iii) de facto exercise of control, (iv) unity of personnel policies emanating from a common source, and (v) the dependency of operations. *Guippone*, 737 F.3d at 226.

The complaint's sole allegation regarding WARN Act violations states that plaintiffs "were not given proper federal and state COBRA or federal and state WARN Act notice when [their] employment ended with SBMHC." (Compl. at 2.) As neither the federal nor the New York WARN Acts allow for liability of individuals, this pleading cannot survive the motion to dismiss filed by the individual defendants, or the motion for judgment on the pleadings filed by defendant Berk. The court thus dismisses, with prejudice, the federal and state WARN Act claims against all individual defendants.

The court also dismisses, with prejudice, the WARN Act claims against defendants NYC Office of Mental Health and the New York State Office of Alcoholism and Substance Abuse

Services. These defendants have not appeared, but the complaint simply fails to plead any facts connecting them to any of the events in question.

By contrast, the WARN Act claims survive against corporate defendants SBMHC and ACACIA. Admittedly, the WARN Act pleadings are bare-bones; for example, the complaint does not specify the number of employees at SBMHC during the relevant time period. However, a court in this district recently found SBMHC liable for WARN Act violations, as SBMHC employed more than 100 employees on a full-time basis before its dissolution. *See 1199 SEIU United Healthcare Workers E.*, 2013 WL 6003731, at *3-5. In that case—unlike here—the complaint did include sufficient facts to conclude that SBMHC was an "employer" under the WARN Act (as the complaint specified that SBMHC employed 109 employees). Reading the pleadings here liberally in light of plaintiffs' *pro se* status, however, the court finds that plaintiffs have stated a plausible claim for WARN Act violations against SBMHC and ACACIA.[2]

### B. The COBRA Claims

The federal COBRA statute provides that an employee may continue to receive health care coverage at a group rate even after his or her termination. *See* 29 U.S.C. §§ 1161(a), 1163. The "purpose of COBRA is to allow employees who lose their jobs to continue their medical coverage at approximately the group rate, which is lower than the rate for individual coverage." *Vangas v. Montefiore Med. Ctr.*, No. 11 CIV. 6722 ER, 2014 WL 5786720, at *3 (S.D.N.Y. Nov. 5, 2014) (citing *Local 217, Hotel & Rest. Emps. Union v. MHM, Inc.*, 976 F.2d 805, 809 (2d Cir. 1992)). The "notification requirements of COBRA are clear: when a covered employee is terminated, an employer must notify the administrator of the group health care plan within

---

[2] SBMHC, an apparently defunct entity, has not appeared in this action. ACACIA denies that it is in fact a "successor employer" to SBMHC. (Dkt. No. 60 at 2.) On a motion to dismiss, however, the court accepts as true the facts alleged in the complaint, which clearly states that ACACIA is the successor employer to SBMHC.

thirty days . . . the administrator then has fourteen days to notify the qualified beneficiary of her right to continue coverage[.]" *Id; see also Treanor v. Metro. Transp. Auth.*, 414 F. Supp. 2d 297, 304 (S.D.N.Y. 2005) (citing 29 U.S.C. § 1166(a)(2)). While statutory damages are available for failure to comply with COBRA's notice provisions, they are available only against the actual plan administrator—not against an employer who is not the plan administrator. 29 U.S.C. § 1132(c)(3); *see also Capobianco v. Sandow Media Corp.*, No. 11 CIV. 3162, 2012 WL 4561761, at *6-7 (S.D.N.Y. Sept. 29, 2012) (*citing Colodney v. Continuum Health Partners, Inc.*, No. 03 CIV. 7276 (DLC), 2004 WL 829158, at *12 (S.D.N.Y. Apr. 15, 2004)). Thus to successfully plead a COBRA claim, a plaintiff must name the plan administrator as a defendant. Finally, while the New York COBRA law is similar to the federal statute in many respects, the state law generally applies only to employers with less than 20 employees.

Plaintiffs' COBRA allegations are included in the same one-sentence pleading noted above with regard to plaintiffs' WARN Act claims ("We were not given proper federal and state COBRA or federal and state WARN Act notice when our employment ended with SBMHC"). The only additional details regarding plaintiffs' COBRA claims come from plaintiff Gill, who claims that "due to the fact that [she] was not given proper COBRA or WARN Act notice when my employment ended with SBMHC on March 6th, 2013 [sic] I had damages of $4,003.70 in out of pocket medical expenses." (Compl. at 2-3.)

These pleadings cannot survive a motion to dismiss. Plaintiffs fail to allege the existence of a qualified healthcare plan governed by COBRA, or to allege that a specific individual or corporate defendant is the plan administrator. Nor do plaintiffs allege that SBMHC or ACACIA employed less than 20 employees, which might subject them to the state COBRA statute—a

pleading which, if made, would be entirely inconsistent with federal WARN Act liability (which, as noted above, requires more than 100 employees on a full-time basis).

Plaintiffs attempt to salvage their COBRA claims in two affirmations filed in response to defendants' motions, claiming that SBMHC's "executive staff" were "responsible for making final decisions regarding the nature of health benefits and payment of health premiums establishing them as health plan administrators." (Dkt. No. 50 at 3.) The affirmations further state that "[e]xecutive staff failed to authorize payment of Adonica Gill's loss of coverage one month prior to termination," and that Gill's health coverage was "terminated retroactively," forcing her to pay approximately $4,000 for a number of procedures between February and April 2013. (*Id.*) But these conclusory allegations do not sufficiently identify a qualified health plan or a particular defendant as the plan "administrator" for purposes of the federal or state COBRA statutes. Without such facts, these pleadings are not sufficient to overcome defendants' motion. Plaintiffs' COBRA claims are therefore dismissed without prejudice.

C. The ERISA Claims

Plaintiffs claim that "Defendants violated ERISA law by failing to pay us severance and accrued fringe benefits," which include alleged vacation, holiday, severance, and sick pay. (Compl. at 2.)

Under the ERISA statute, a plan participant may bring a civil action in federal court "to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan." 29 U.S.C. § 1132(a)(1)(B). ERISA grants federal courts jurisdiction over all claims by an "employee welfare benefit plan" beneficiary who seeks to "recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits

under the terms of the plan." 29 U.S.C. § 1132(a)(1)(B) & (e)(1). The term "employee welfare benefit plan" has been held to apply to "most, but not all," employer obligations to pay severance benefits. *Schonholz v. Long Island Jewish Medical Center,* 87 F.3d 72, 75 (2d Cir. 1996). As both the Supreme Court and the Second Circuit have emphasized, "ERISA applies only where such an undertaking or obligation requires the creation of an ongoing administrative program." *Colodney,* 2004 WL 829158, at *11 (internal citations omitted). Thus, to sustain an ERISA claim, a plaintiff must allege that he or she (1) was an employee, and (2) eligible to receive a benefit under a qualified plan. *See Karagozian v. Coty US, LLC,* No. 10 Civ. 5482, 2011 WL 536423, at *3 (S.D.N.Y. Feb. 10, 2011); *Cannon v. Douglas Elliman, LLC,* No. 06 Civ. 7092, 2007 WL 4358456, at *7 (S.D.N.Y. Dec. 10, 2007).

Additionally, in a recovery of benefits claim, "only the plan and the administrators and trustees of the plan in their capacity as such may be held liable." *Crocco v. Xerox Corp.,* 137 F.3d 105, 107 (2d Cir. 1998) (internal quotations marks and citations omitted). When a plan is maintained by a single employer, the ERISA statute defines a "plan sponsor" as the "employer." 28 U.S.C. § 1002(16)(B)(i). "The term 'employer' means any person acting directly as an employer, or indirectly in the interest of an employer, in relation to an employee benefit plan." 28 U.S.C. § 1002(5). Thus, while an "employer" may sometimes be held liable for ERISA violations if acting "in relation to an employee benefit plan," other individuals "may not be liable for corporate ERISA obligations solely by virtue of their status as directors or officers of a corporation." *Ferro v. Metro. Ctr. for Mental Health,* No. 13 CIV. 2347, 2014 WL 1265919, at *6-8 (S.D.N.Y. Mar. 27, 2014).

In their complaint, plaintiffs have not alleged facts regarding any individual defendant's actions "in relation to an employee benefit plan," as an administrator or otherwise. Because

10

individuals cannot be held liable for corporate ERISA obligations solely because they served on a corporate board or staff, plaintiffs fail to state an ERISA claim against any of the individual defendants.

Moreover, plaintiffs fail to identify a specific plan eligible for ERISA benefits, or any facts plausibly demonstrating that ACACIA or SBMHC were the administrator or trustee of any such plan. Plaintiffs' conclusory allegations regarding these corporate defendants' ERISA liability cannot survive the instant motions to dismiss, and are dismissed without prejudice.

D. The FLSA and State Labor Law Claims

Plaintiffs claim that they "were not properly paid under the federal Fair Labor Standards Act and other applicable law nor were we hired by ACACIA." (Compl. at 2.) Plaintiffs similarly claim that "Defendants failed to pay us properly under state wage and hour laws." (*Id.* at 3.)

To bring a successful FLSA claim, a plaintiff must adequately plead that defendants were plaintiffs' "employer," a required showing for liability under the FLSA. The FLSA defines "employee" as "any individual employed by an employer." 29 U.S.C. § 203(e)(1). An entity "employs" an individual under the FLSA if it "suffer[s] or permit[s]" that individual to work. 29 U.S.C. § 203(g). An entity "suffers or permits" an individual to work if, "as a matter of 'economic reality,' the entity functions as the individual's employer." *Zheng v. Liberty Apparel Co. Inc.*, 355 F.3d 61, 66 (2d Cir. 2003) (interpreting the definition of "employer" under the FLSA). The determination of whether a defendant qualifies as plaintiff's "employer" is "to be based on the circumstances of the whole activity, viewed in light of "economic reality." *Id.* at 71-72 (internal citations and quotation marks omitted.)

11

The complaint fails to make this showing. The complaint does not include facts supporting a conclusion that any of the defendants were plaintiffs' "employer," a required showing for liability under the FLSA. In fact, plaintiffs' complaint explicitly notes that they were *not* hired by ACACIA—one of the named corporate defendants.

In their affirmations in opposition to the instant motions, plaintiffs attempt to save their wage claims. But even reading the affirmations in the light most favorable to plaintiffs, plaintiffs admit in the affirmations that "boards members were not employers[.]" This admission eliminates wage claims against any of the individual board members (Langrod, Alba, Straci, Rowe, Rivera-Myrick, Izequierdo, and Berk). And, plaintiffs' allegations in the affirmations regarding the actions of the executive staff (Martinez, Gatell, and Lopez) merely restate the legal test to qualify as an "employer" under the statute, by noting that the executive staff was "responsible for hiring and firing and in control of all conditions affecting our employment and compensation." (Dkt. No. 50 at 2.) This pleading, without more factual content, cannot sustain plaintiffs' FLSA or state labor law claims.

### E. The NLRA Claims

Plaintiffs' sole pleading implicating the NLRA alleges that "[j]urisdiction is based on" the NLRA, among a number of other federal statutes. (Compl. at 1.) Plaintiffs allege no facts justifying a NLRA claim. In any event, any such claim would be preempted by the NLRB's primary jurisdiction over NLRA claims. And, any such claim would be time-barred. NLRA claims include a six-month statute of limitations, but plaintiffs did not file suit until December 2013—more than six months after plaintiffs ended their employment terms with SBMHC. *See* 29 U.S.C. 106(b). Because it would fail as a matter of law, plaintiffs' NLRA claim must be dismissed with prejudice.

## CONCLUSION

For the reasons set forth above, the motion to dismiss brought by individual defendants (Dkt. No. 36) is granted. For similar reasons, individual defendant Berk's motion for judgment on the pleadings (Dkt. No. 42) is also granted.

ACACIA's motion to dismiss (Dkt. No. 58) is granted with respect to plaintiffs' COBRA, ERISA, and FLSA claims. ACACIA's motion to dismiss is denied with respect to the federal and state WARN Act claims. The motion to consolidate is denied as moot.

Given the *pro se* status of plaintiffs, certain claims are dismissed without prejudice. Because the federal and state WARN Act claims against the individual defendants and the NLRA claim against all defendants would fail as a matter of law even if additional facts were pled by plaintiffs, they are dismissed with prejudice. The remaining claims against all defendants are dismissed without prejudice. If plaintiffs seek to revive any claims that have now been dismissed without prejudice, they must file an amended complaint within 60 days of the date of this opinion.

The Clerk of the Court is directed to terminate the motions listed as items 36, 42, and 58 on the docket.

SO ORDERED.

Dated:   New York, New York
         March 18, 2015

Thomas P. Griesa
U.S. District Judge

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 3/18/15

13